IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES MELVIN RUSSELL,

Plaintiff,

v.

CSX TRANSPORTATION, INC.,
a Corporation,

Defendant.                              No. 12-cv-316-DRH-PMF

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.  INTRODUCTION

Before the Court is defendant CSX Transportation, Inc.'s, motion for summary judgment (Doc. 41, Memo. at Doc. 42). Defendant CSX Transportation, Inc., (CSX) seeks summary judgment on plaintiff James Melvin Russell's complaint. Plaintiff James Melvin Russell (Russell) has responded in opposition (Doc. 47), to which CSX has replied (Doc. 48). For the following reasons, CSX's motion is **DENIED.**

### II.  BACKGROUND

Russell, a train conductor in CSX's employ, filed this action in this Court against CSX on April 17, 2012. On December 21, 2009, Russell was on a train travelling from Louisville, Kentucky to Cincinnati, Ohio. During the trip, Russell's train pulled into a side track in Verona, Kentucky to let another train pass.

Russell dismounted his locomotive to perform a visual inspection of the passing train. Russell stepped down from the locomotive facing the steps and when he stepped down onto the ballast with his right foot he alleges the ground "separated" and he fell.

Russell brings his one-count complaint under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* Russell alleges CSX negligently and carelessly failed to provide Russell with a safe work place, a reasonably safe manner within which to do his work, and a firm and level ballast and work surface.

Russell alleges CSX failed to maintain Russell's work area in a condition which would protect Russell and did not correct dangerous work conditions. Russell's complaint cites CSX's alleged violations of 49 C.F.R. § 213.33, "in failing to keep its work surfaces adjacent to the roadbed maintained and free of obstruction," 49 C.F.R. § 213.103, "in failing to conduct scheduled track and ballast inspections," and 49 C.F.R. § 213.233, "in failing to conduct scheduled track and ballast inspections" (*See* Doc. 2, ¶¶ 7 and 8). Russell alleges CSX's negligence caused him to sustain "severe and permanent injuries" to his knees, legs, and feet, in addition to other related injuries.

CSX moves for summary judgment, arguing that the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20106(a), and specifically the Federal Railroad Administration (FRA) ballast regulations, 49 C.F.R. § 213.103, preclude Russell's claims. CSX argues there is no evidence to support Russell's allegation that the

ballast on which Russell stepped failed to meet the FRA's performance standards for ballast. And further, no evidence support Russell's remaining claims of negligence.

### III. LAW AND APPLICATION

#### 1. Standard

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial burden of establishing the absence of fact issues and its entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). Once the movant has shown the facts entitle it to judgment in its favor, the burden shifts to the non-moving party to identify some evidence in the record that establishes a triable factual issue. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).

A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001). The Court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

## 2. Arguments and Application

### a. Preclusion

CSX argues Russell's FELA claims are precluded in light of the FRA ballast regulation, 49 C.F.R. § 213.103. In 1908, Congress enacted the FELA. 45 U.S.C. § 51, *et seq.* The FELA provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "The intent of the FELA is to provide broad remedial measures for railroad employees." *Green v. CSX Transp., Inc.,* 414 F.3d 758, 765 (7th Cir. 2005). As this broad language covers injury caused "in whole or in part" by the railroad's negligence, the railroad is liable if, "the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." *Coffey v. Northeast Illinois Regional Commuter R. Corp.,* 479 F.3d 472, 476 (7th Cir, 2007) (quoting *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506 (1957) (emphasis added)).

In 1970, Congress passed the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents." 49 U.S.C. § 20101. The FRSA vests the Secretary of Transportation with the authority to prescribe regulations to "supplement" railroad safety laws and regulations. 49 U.S.C. § 20103. The Secretary has delegated that authority to the FRA. 49 C.F.R. § 1.88.

The Secretary appointed a Task Force charged with studying railroad safety problems and recommending solutions. H.R. Rep. No. 91-1194 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4104, 4108. The Task Force unanimously recommended the enactment of broad federal regulation over all areas of railroad safety. *Id.* It noted the "truly interstate character" of railroads required a "uniform body of regulation and enforcement." *Id.* The Task Force recommended that existing state statutes would stay in effect until preempted by federal action. *Id.*

In response to the Task Force's recommendations, Congress enacted the preemption clause of the FRSA. 49 U.S.C. § 20106, provides:

> **(a) National uniformity of regulation.--(1)** Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> **(2)** A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

>   **(A)** is necessary to eliminate or reduce an essentially local safety or security hazard;
>
>   **(B)** is not incompatible with a law, regulation, or order of the United States Government; and
>
>   **(C)** does not unreasonably burden interstate commerce.

CSX relies on the preemption clause of the FRSA and specifically, the FRA ballast regulation in arguing Russell's claims are precluded as a matter of law. In *Waymire v. Norfolk and Western Railway Co.,* 218 F.3d 773 (7th Cir. 2000), the Seventh Circuit determined, "whether a railroad company can be liable in a FELA negligence action claiming unsafe speed and inadequate warning devices when the complained of conduct complies with the conduct mandated by FRSA." *Id.* at 775. In finding the plaintiff's FELA claims were precluded, the court looked to the Supreme Court's preemption analysis in *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658 (1993).

In *Easterwood,* the Supreme Court found that the plaintiff's state law excessive speed claims were barred under the preemption clause of the FRSA, as regulations under the FRSA set the maximum train speeds and the defendant's train was within that limit. In determining the speed regulations "covered" the subject, the Supreme Court noted that to prevail in a preemption argument, the proponent must establish that the regulations more than "touch upon" or "relate to" the subject matter; the regulation must "substantially subsume the subject matter of the relevant state law." *Id.* at 665.

Thus, the Seventh Circuit found, "[i]n *Easterwood*, the train was operating within the FRSA prescribed 60 miles per hour speed limit, as was [the defendant's] train in this case. It would thus seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical and when the Supreme Court has already found that the conduct is not culpable negligence." *Waymire*, 218 F.3d at 776. The court went on to employ similar reasoning in rejecting the plaintiff's inadequate warning device claim. *Id.* at 776-77.

CSX, not for the first time, argues the FRA ballast regulations "cover" the subject matter of ballast and thus Russell's claims are precluded. The FRA ballast regulations provide as follows:

> Unless it is otherwise structurally supported, all track shall be supported by material which will—
>
> **(a)** Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> **(b)** Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> **(c)** Provide adequate drainage for the track; and
>
> **(d)** Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. Additionally, 49 C.F.R. §§ 213.33 and 213.37 address roadbed drainage and trackside vegetation, and related regulations concern technical track geometry requirements, 49 C.F.R. §§ 213.57 (curves), 213.63 (track surface), and 213.55 (alinement).

CSX asks that this Court rely upon the Sixth Circuit's majority opinion in *Nickels v. Grand Trunk Western Railroad, Inc.,* 560 F.3d 426 (6th Cir. 2009), and find that the regulations above demonstrate that the FRSA "covers" the subject matter of Russell's claims. In *Nickels,* the plaintiffs brought FELA claims alleging years of walking on over-sized track ballast caused them injury. The majority held the regulation "substantially subsumes the issue of ballast size," even though the regulation did not prescribe a specific size of ballast for certain types of classes or tracks, instead leaving that determination to the railroad's discretion. *Id.* at 431. In so finding, the Sixth Circuit noted that while the plaintiffs argued 49 C.F.R. § 213.103 does not address, "what constitutes reasonably safe walkway for railroad employees performing their duties adjacent to the track," plaintiffs' complaint did not allege, "negligence in the railroad's use of oversized ballast in areas separate from those where track stability and support are concerned." *Id.* at 432.

In contrast, the dissent found application of the *Easterwood* analysis would not require a finding that the plaintiffs' claims were categorically precluded. *Id.* at 433 (Rogers, J., dissenting). The dissent agreed with *Waymire,* 218 F.3d at 775-76, in its general application of the FRSA's preemption clause to FELA claims provided the claim would be preempted if brought under state tort law. However, the dissent noted, "under the Supreme Court's FRSA federal preemption analysis, the FRSA regulations that require adequate physical support for rails do not sufficiently imply that railroads may use any grade of sufficiently supportive

Page **8** of **14**

ballast, no matter the risk to employees who must walk on the ballast." *Id.* at 433. "Nothing in 49 C.F.R. § 213.103 or any related regulations addresses the issue of trackside walkways and ballast size. The regulations generally require adequate support for the trains, and advert in no way to the nature of a walking surface." *Id.* Thus, the dissent found that,

> [T]he FRSA [ballast] regulation is a floor that guarantees a minimum level of safety and there are many ways that the railroad can meet the standard. The manner in which the railroad complies with the standard may involve using ballast that is more or less conducive to creating safe walkways for railroad employees. While compliance with the FRSA regulation is evidence of due care, it "does not preclude finding negligence if reasonable railroads would have taken additional precautions to prevent injury to their employees."

*Id.* at 435-36 (citing *Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439, 442 (5th Cir. 2001)).

As the parties are aware, the Seventh Circuit has not addressed the issue of preclusion of FELA ballast-related claims in light of the FRA ballast regulation. CSX argues the ballast regulation "covers" the subject of ballast configuration, although a particular configuration of ballast is not specified. CSX relies on *Nickels* as well as decisions of district courts outside of the Seventh Circuit in support of its argument for preclusion. *See e.g. Lybrand v. Union Pac. R.R. Co.,* 2012 WL 1436690, *3 (E.D. Ark. April 25, 2012) (Moody, J.) (finding the plaintiff's claims based on size and shape of ballast precluded, while claims as to failure to provide reasonably safe walkway were not); *Crabbe v. Consolidated Rail Corp.,* 2007 WL 3227584, *4 (E.D. Mich. Nov. 1, 2007) (Duggan, J.)

Page **9** of **14**

(granting summary judgment as to FELA allegations claiming improper ballast or oversized ballast, while leaving remaining FELA negligence claims generally alleging failure to provide adequate and safe work methods and inspect and investigate premises intact); *Brenner v. Consolidated Rail Corp.,* 806 F. Supp. 2d 786, 796 (E.D. Pa. 2011) (Joyner, J.) (relying persuasively on *Nickels* and finding the plaintiff's FELA negligence claims based on the nature and size of ballast used for track stability, support, and drainage were precluded); *McCain v. CSX Transp., Inc.,* 708 F. Supp. 2d 494, 504 (E.D. Pa. 2010) (Robreno, J.) (finding the plaintiff's claims based on the nature and size of the track ballast were precluded, in persuasive reliance on *Nickels*); *CSX Transp., Inc. v. Pitts,* 61 A.3d 767, 782-83 (Md. 2013) (Adkins, J.) (finding that FRSA "covers" the use of ballast that support a track, but that CSX failed to prove the ballast at issue performed a track-support function).

As for cases within the Seventh Circuit, in *Norfolk S. Ry. Co. v. Box,* 556 F.3d 571 (7th Cir. 2009), the Seventh Circuit held an Illinois law requiring rail switching yards to include walkways, parallel to each track, for persons who work there was not preempted as "no federal regulation deals with walkways." *Id.* at 572. Although *Norfolk* was of course not decided in the context of a FELA claim, its reliance on an absence of federal railroad walkway regulations is informative to the task as hand. Additionally, as CSX is aware, numerous district courts within this Circuit have addressed the issue of preclusion in relation to FELA ballast-related claims. *See e.g. Grimes v. Norfolk S. Ry. Co.,* 116 F. Supp. 2d 995, 1002

(N.D. Ind. 2000) (Sharp, J.) (finding plaintiff's claim that railroad was negligent in failing to provide a safe walkway for employees to use when they must walk alongside the train to inspect cars was not precluded by FRA regulations); *Wilcox v. CSX Transp., Inc.,* 2007 WL 1576708, * (N.D. Ind. May 30, 2007) (Lee, J.) (noting favorable reliance on *Grimes,* and holding that the plaintiff's claim that he developed injury over time from walking on over-sized ballast was not precluded by the FRA ballast regulations as they contain no language about employee safety); *Grogg v. CSX Transp., Inc.,* 659 F. Supp. 2d 998, 1015 (N.D. Ind. 2009) (Lee, J.) (finding that the plaintiff's FELA negligence claim alleging that he was forced to work on uneven ballast and that this caused or contributed to the arthritis in his knee was not precluded, noting the law in the Seventh Circuit had not changed since *Wilcox*).

In extensively reviewing the cases above, it would appear the general consensus among these decisions is that FELA claims alleging negligence in relation to "walkway" ballast are not necessarily precluded. This is in part due to the FRA's decision not to adopt federal walkway rules, *see Box,* 556 F.3d at 573 (citing 41 Fed. Reg. 50, 302 (1976)), and thus it does not appear the FRA ballast regulations "substantially subsume" the subject of FELA negligence claims in relation to walkway ballast. *Easterwood,* 507 U.S. at 665. In its decision not to adopt federal walkway regulations the FRA stated that, "if an employee safety problem does exist because of the lack of walkways in a particular area or on a particular structure, regulation by a State agency that is in a better position to

assess the local need is the more appropriate response." *Id.* (quoting 42 Fed. Reg. 22, 184–85 (1977)) (quotation marks omitted). The ballast regulation at issue, 49 C.F.R. § 213.103, falls under Subpart D, "Track Structure," and addresses the need to provide a safe roadbed for the trains. The argument that uniformity in regulations of this type is required is not lost on this Court. However, the regulation does not address the use or configuration of ballast as a walking surface for railroad employees.

CSX offers an affidavit of Roy L. Dean (Dean), a civil engineer in Wake Forest, North Carolina. Dean avers the following:

> 2. [Russell] claims ballast gave way as he dismounted the locomotive near Verona, Kentucky. [Russell] dismounted the locomotive on mainline track.
>
> 3. When dismounting the locomotive, plaintiff stepped on ballast that structurally supported the track. Track supporting ballast extends a minimum of four (4) feet beyond the ends of the cross ties. [] Russell would have stepped on the ballast approximately 20 inches to 24 inches beyond the end of the cross ties. The track supporting ballast would have extended approximately an additional two (2) feel beyond the location [] Russell placed his foot.

(Doc. 42-2, p. 1).

At his deposition, Russell testified that the configuration of the ballast that he stepped onto while disembarking a locomotive caused his injury (Doc. 47-1, p. 33). He was facing the steps of the locomotive and holding onto its railing when he stepped down onto ballast. When he stepped down, the ballast, i.e., "ground," "separated" (*Id.*). Russell alleges the "ballast was not properly level. It was below the tie. And the area where [he] was—basically it was wash-out from erosion,

things of that nature" (*Id.* at p. 24). When asked whether the "surface that was adjacent to the roadbed" caused any injury, Russell answered, "well, what I am saying is there was . . . [n]o ballast by the ties" (*Id.* at p. 32). And later when asked, "[s]o, with respect to the surface adjacent to the roadway, did that have anything to do with your injury?" Russell, answered, "No, Sir." Russell then went on to admit he had no expertise on the construction of railroad roadways or ballast (*Id.* at p. 33).

Generally, Russell alleges CSX failed to provide him a reasonably safe work place as it did not provide him an adequate work surface on which he could disembark from the locomotive. This Court feels Russell's claims are not and should not be precluded. As it is most obviously an unsettled question in the Seventh Circuit, this Court feels the dissent of *Nickels* persuasively demonstrates that the FRA ballast regulations do not "substantially subsume" Russell's claims. The ballast regulation is a floor which does not take into account the fact that ballast serves as a walkway and/or place for railroad employees to dismount. In the course of Russell's employment, he is required to disembark from CSX's locomotive to inspect passing trains. The FRA ballast regulations do not contemplate this employer-mandated use of ballast. In contrast and by way of analogy, the Court feels CSX's argument would perhaps be well taken in the context of a commercial shipper's claim that ballast shifted and thus caused damage to its cargo. If the shipper then claimed this damage resulted from CSX's failure to comply with a state ballast regulation designed to prevent erosion and

shifting of ballast, its property damage claim would most likely be preempted. However, in this case, we have a human being whose employer requires him to disembark from a locomotive onto ballast. In this Court's opinion, the FRA ballast regulations do not preclude Russell's FELA claim.

### b. Factual Disputes

CSX offers Dean's affidavit which alleges that the ballast at the location incident conformed to all applicable FRA regulations (Doc. 42-2). As the Court notes above, this does not carry the day. Russell offers purported CSX regulations concerning track inspections (Doc. 47-1). In reviewing the entire record, it appears genuine factual disputes are present. Thus, CSX's motion for summary judgment is **DENIED** (Doc. 41).

### IV. CONCLUSION

CSX's motion for summary judgment is **DENIED** (Doc. 41). This case is set for final pretrial conference to be held on Thursday, May 8, 2014, at 9:00 a.m.

**IT IS SO ORDERED.**

Signed this 3rd day of March, 2014.

Digitally signed by David R. Herndon
Date: 2014.03.03 16:38:40 -06'00'

**Chief Judge**
**U.S. District Court**